**UNION PACIFIC RAILROAD COMPANY, Plaintiff,**

v.

**J. H. BAXTER & CO.,
Defendant.**

**SOUTHERN PACIFIC TRANSPORTATION COMPANY, Plaintiff,**

v.

**J. H. BAXTER & CO.,
Defendant.**

**Civ. Nos. 74–606, 74–79.**

United States District Court,
D. Oregon.

Nov. 10, 1975.

John F. Weisser, Jr., Portland, Or., for plaintiff Union Pacific RR Co.

John Wiley Gould, Portland, Or., for Southern Pacific Trans. Co.

Duane A. Bartsch, Portland, Or., for defendant.

BURNS, District Judge:

These cases involve railroad rate schemes which allow certain shippers to pay through rates for interrupted shipments. Without these schemes the shipper would have to pay a higher rate—the total of the ordinary ("local") rates for each of the two interrupted shipments. For example, poles are shipped by rail from Medford to Eugene, unloaded and treated there by the shipper, then reloaded and shipped to Chicago. If it complies with the tariff, the shipper pays only the through rate from Medford to Chicago, a rate lower than the total of the rate from Medford to Eugene and the rate from Eugene to Chicago. This advantageous rate treatment scheme is referred to as a "transit privilege."

Transit privileges are effectuated through either credits or refunds. In the above hypothetical, the shipper would pay the initial rate for the inbound shipment to Eugene. When the shipment later moves outbound to Chicago, the shipper's rate is recomputed. A credit or refund then is given, based upon the amount stated on the inbound freight bill or credit slip which is surrendered at the time of the outbound shipment. The amount by which the charge on the surrendered slip and the charge for the outbound shipment exceeds the through rate is refunded to the shipper.

Defendant J. H. Baxter Company is a shipper and receiver of freight that maintains "transit houses" on Plaintiff Union Pacific (Civ. No. 74–606) rail lines in The Dalles, Oregon, and on Plaintiff Southern Pacific (Civ. No. 74–79) rail lines in Eugene, Oregon. At those stations, the defendant treated, or otherwise altered wood products according to purchaser's specifications. Bax-ter routinely applied for and received transit privileges from these two railroads. On over one hundred different occasions in issue here, it applied for and received refunds from the plaintiffs on shipments of wood products which were identified specifically as having come to the transit station by truck, not by rail.

All transit privileges, including those which Baxter claims, rest on a fiction that the interrupted shipment actually was continuous and uninterrupted. To qualify for these privileges, therefore, shippers usually must show that the inbound and outbound shipments were identical. This fiction and that requirement defines the issue in this case: Is Baxter entitled to transit privileges, in this case refunds, for outbound shipments by rail which came to its transit station not by rail?

Plaintiffs say no. hey contTend that these refunds are available only to shipments which arrive at and depart from the station by rail, as if on one uninterrupted shipment. Hence, plaintiffs bring these actions to recover the refunds, the amount of which is not in dispute. Baxter denies it owes the money. It contends essentially that if fifty tons of lumber arrive at the station by rail, and fifty tons of lumber later leave the station by the same mode, it is immaterial whether they are the same fifty tons or not. Defendant asks the Court to look to the tariff for the language which it says supports its position. Defendant also claims the history of transit privileges calls for non liability.

Item 4900(e) of the Southern Pacific tariff provides: "Transit shipments moving outbound from transit point via SP rail can be covered only by inbound tonnage moving via SP to transit station." Items 275 of the Union Pacific tariff and 21 of the Southern Pacitif tariff read "Transit privileges authorized herein will apply only on shipments handled into transit stations in

rail carriers line haul service." Other Items, for example 200, 245, 250 and 260, all clearly contemplate inbound shipments only by rail in order to qualify.

Defendant asks the Court to overlook this language and focus instead on the tariff requirement that shippers need only surrender credit slips "representative both in tonnage and kind of the transit commodity," Item 305. Defendant suggeststhat the outbound rail shipments in this case were representative of the inbound rail shipments and therefore entitled to transit privileges. At best, this language, if stretched tenuously, may be said to conflict with the other terms of the tariff. But when weighing this "ambiguity" against the plan requirement of inbound rail shipments from Items 275 and 21 as a transit privilege *sine qua non*, the outcome is clear. Not only the tariff language, but the transit privilege history is against the defendant. Case law likewise lies on the plaintiffs' side of the issue. It is a well-recognized rule that the substitution which Baxter claims must be authorized specifically. *Utah Poultry Producers Co-op v. Union Pacific R. R. Co.*, 147 F.2d 975 (10th Cir. 1945). Those cases which have not required specific authorization involved commodities which unavoidably became commingled at transit stops. *See, e. g., The Transit Case*, 24 ICC 340, 350 ( ) (grain). Commingling was not unavoidable here. As a result, the plaintiffs are entitled to prevail.

The foregoing shall constitute findings of fact and conclusions of law in accordance with F..RCiv.P. 52(a). Plaintiffs should submit appropriate judgments.